**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

   **v.**

**DEVIN RAVINE,**                                              Docket No. 1:25-CR-187 (AMN)

        **Defendant.**

---

### MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION FOR REVIEW OF RELEASE ORDER PURSUANT TO 18 U.S.C. §3145

The defendant, DEVIN RAVINE, through counsel, Timothy E. Austin, Assistant Federal Public Defender, hereby submits this memorandum of law in opposition to the government's motion for review of release order pursuant to 18 U.S.C. §3145, with respect to the order of release issued on April 29, 2025 by Hon. Shashi H. Kewalramani, U.S. Magistrate Judge for the Central District of California [hereinafter 'C.D. Cal.'].  By its motion, the government asks this Court to revoke Magistrate Judge Kewalramani's order denying the government's motion for pretrial detention and releasing Mr. Ravine on conditions.  The government asks this Court to order Mr. Ravine to be detained during the pendency of the instant proceedings on the grounds that he presents a danger to the community that no condition or combination of conditions can mitigate.  Mr. Ravine asks this Court to deny the government's motion.  Mr. Ravine asks this Court to allow him to be released on the conditions set by Magistrate Judge Kewalramani or on such additional or different conditions as this Court would find to be the least restrictive conditions that would reasonably assure Mr. Ravine's appearance and the safety of the community.

1

**<u>Procedural history</u>**

The government filed a criminal complaint on April 23, 2025, charging Devin Ravine with sexual exploitation of a child, in violation of 18 U.S.C. §2251(a).  N.D.N.Y. Case No. 1:25-MJ-122 (PJE), Dkt No. 1.  Mr. Ravine was arrested on the federal criminal complaint in the Central District of California on or about April 25, 2025 pursuant to an arrest warrant issued upon the filing of the criminal complaint.  Exhibit 1 (C.D. Cal. docket report).

Mr. Ravine was produced in the U.S. District Court, C.D. Cal., on April 25, 2025 for an initial appearance before U.S. Magistrate Judge Shashi H. Kewalramani.  Exhibit 2 (Calendar/Proceedings Sheet, Local/Out-of-District Case).

On April 25, 2025, the government filed a notice of request for detention.  Exhibit 3 (Government's Notice of Request for Detention).  A detention hearing was held on April 25, 2025.  Exhibit 1, Dkt No. 5; Exhibit 2.  The detention hearing was continued to April 29, 2025. Exhibit 1, Dkt No. 5; Exhibit 2.  At the continued hearing, after the parties were heard, Magistrate Judge Kewalramani ordered Mr. Ravine to be released subject to conditions.  Exhibit 1, Dkt No. 6; Exhibit 4 (Minutes of Rule 5/20 Hearing/Detention Hearing).[1]

Immediately after Magistrate Judge Kewalramani's grant of release, the government orally moved for a temporary stay of the release order, which Magistrate Judge Kewalramani granted. Exhibit 4.  On May 1, 2025, in this district, the government appealed the order of release and sought this Court's stay of release pending that appeal.  N.D.N.Y. Case No. 1:25-CR-187, Dkt No. 1.  On May 1, 2025, this Court granted a stay of release pending review of Magistrate Judge Kewalramani's release order.  N.D.N.Y. Case No. 1:25-CR-187, Dkt No. 2.

---

[1]Transcripts of those underlying proceedings have been created and were filed by the government in N.D.N.Y. Case No. 1:25-CR-187 as Document 7-1 and Document 7-2, respectively.  Citations to those two transcripts will appear here as T1:[page #] for the proceeding of 4/25/25 and as T2:[page #] for the proceeding of 4/29/25.

**Release proceedings before Magistrate Judge Kewalramani:**

*Initial pretrial services report:*

Prior to the initial appearance, a pretrial services investigation was conducted and a pretrial services report was prepared (on file in N.D.N.Y. Case No. 1:25-CR-187 within Dkt No. 6).  Mr. Ravine was fully cooperative in that investigation.  Information provided by him during the interview was verified by his mother, Christina Ravine.

The pretrial services investigation initially revealed the following important facts, among others:

- Mr. Ravine, just 20 years old, was born in Riverside, California, is a lifetime resident of the Central District of California, and all his closest family members (parents, siblings, grandparents and cousins) live in that district;
- He could return to his prior residence at the home of his mother and stepfather and 10-year-old brother; alternatively, he could reside with his grandmother, Rose Frye, who lives alone and has no firearms;
- Mr. Ravine is a high school graduate;
- Mr. Ravine is not married and has no children;
- Mr. Ravine's history of international travel was limited (Mexico one time);
- Mr. Ravine's grandmother would be willing to sign an appearance bond;
- Mr. Ravine had been employed pre-arrest for two years at a local market, which was terminated post-arrest;
- Mr. Ravine has no income;
- Mr. Ravine has no history of physical or mental health issues;
- Mr. Ravine previously used marijuana and alcohol on a limited basis;
- Mr. Ravine has no prior criminal history and, therefore, no history of failing to appear for court proceedings.

Based upon that information, the pretrial services report included the recommendation that Mr. Ravine be released on a $20,000 appearance bond subject to pretrial supervision on conditions including, among others, restricted travel; no contact with an alleged victim; comply with a curfew with GPS location monitoring; restrictions on possession of digital devices; submit all digital devices to monitoring; submission to searches of items, including digital devices, to determine compliance; restrictions on contact with minors; restriction on being

present near or being employed by places frequented by minors; no viewing or possession of child pornography, and submission to searches of electronic devices to determine compliance.

The pretrial services report specifically recommended that Mr. Ravine possess no more than one smartphone device as approved by the supervising agency and that he reside with his grandmother, Rose Frye.

*Detention hearing of April 25, 2025:*

At the detention hearing of April 25, 2025, Magistrate Judge Kewalramani acknowledged this is a presumption case. T1:5. The prosecutor, in support of detention, cited the "very serious" nature of the alleged conduct, that "significant penalties" were possible, and that "[Mr. Ravine is] a younger man and the conduct involves a teenage girl." *Id.* He cited his concern about "comments that [Mr. Ravine] made in the chat suggesting that he was – fantasized or interested in even younger girls." T1:6. Based upon that, the prosecutor said, "I believe he poses a danger to the community and requests that the Court order him to be detained and transported." *Id.* The prosecutor did not argue how recommended conditions of supervision would be deficient to address any arguable danger posed by Mr. Ravine. The prosecutor made no argument about risk of flight. The prosecutor made no argument that Mr. Ravine had not rebutted or could not rebut a presumption of detention.

At that hearing, defense counsel pointed out the presence of Mr. Ravine's mother and grandmother in court; that Mr. Ravine had no criminal history or indications that he was a risk of flight; that he had been gainfully employed but might not have that job post-release; that he had no history of problematic alcohol or drug use; and that he had lifelong ties to his community. Defense counsel argued that conditions could be set to mitigate any danger to the community, including, among other things, location monitoring; disclosure, searches and

monitoring of digital devices; that he reside with his grandmother; and a requirement that Mr.

Ravine post the $20,000 bond recommended by the pretrial services report.  T1:6-7.

Ultimately, Magistrate Judge Kewalramani stated that he was not opposed to release on

bond but that the proffered surety would not be sufficient.  The Court gave the defense more

time to develop additional sureties and continued the matter.  T1:11.

*Supplemental pretrial services report:*

A supplemental pretrial services report was prepared (on file in N.D.N.Y. Case No. 1:25-

CR-187 within Dkt No. 6) prior to the continued hearing.  The supplemental report set forth,

among other things, that Mr. Ravine's grandmother was willing to sign an increased bond and

that additional family members of Mr. Ravine had come forward to assist with bond.  The

report included the recommendation that, in light of the additional bail resources and available

residence of Rose Frye, conditions continued to exist that could mitigate concerns about

nonappearance and danger to the community.

*Detention hearing of April 29, 2025:*

At the detention hearing of April 29, 2025, the government argued that Mr. Ravine

should be detained, arguing that "additional [bail] resources are not sufficient in this case to

mitigate the danger posed by this defendant, his conduct directed at multiple minor victims, and

the risk of non-appearance."  T2:5.  The prosecutor pointed out that "it's actually danger to the

community that is likely greater than the risk of non-appearance."  *Id*.  The prosecutor raised a

concern that Mr. Ravine's family members had not stopped him from engaging in the alleged

conduct.  T2:5-6.  The prosecutor made no argument that Mr. Ravine had not rebutted or could

not rebut a presumption of detention.  The prosecutor did not argue how recommended

conditions of supervision—for instance, disclosure of and monitoring use of digital devices and

searches to monitor compliance—would be deficient to address any arguable danger posed by Mr. Ravine. The prosecutor made no specific argument about how Mr. Ravine might pose a risk of flight, if at all. The prosecutor made no argument that Mr. Ravine had not rebutted or could not rebut a presumption of detention.

Defense counsel proffered that additional sureties were willing to sign bonds totaling $60,000. T2:6.

Magistrate Judge Kewalramani then found that Mr. Ravine's family ties rebutted the presumption of detention and that Mr. Ravine did not present a problematic risk of flight due to his extensive ties to his community and absence of ties out of the country. T2:7. Regarding dangerousness, Magistrate Judge Kewalramani noted that despite the seriousness of the allegations, Mr. Ravine's strong family ties, his absence of criminal history, his lack of drug or alcohol abuse, his absence of a history of non-appearance, and that he is not on parole or probation weighed in favor of release. Magistrate Judge Kewalramani found that the government failed to meet its burden to show "by clear and convincing evidence" that no conditions can be set. T2:8-10. Regarding the government's suggestion that Mr. Ravine could not be released due to the risk he would repeat the alleged conduct while on release, Magistrate Judge Kewalramani observed, "getting charged here is likely to result in less likelihood of repetition of this activity than to encourage it." T2:9.

The Court then imposed the conditions of pretrial supervision recommended by the Pretrial Services Office, including, among other things, that Mr. Ravine have no contact with the alleged victim, that he reside with his grandmother, and that he be subjected to location monitoring. The Court also imposed highly restrictive conditions specific to a sex-offense allegation, including that Mr. Ravine be subject to severe restrictions on possession or use of

computer or other digital devices, that he be subject to severe restrictions on contact and

opportunities for contact with minors, that he not view or possess child pornography, and that

he be subject to searches and monitoring to ensure compliance with restrictions on use of digital

devices and prohibitions on viewing or possessing contraband content.  T2:10-18.  Those

particular conditions appeared as follows in the minutes of the detention hearing:

**Cases Involving a Sex-Offense Allegation**

☑ Possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications
and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, that you disclosed
to Supervising Agency upon commencement of supervision.  You must disclose any new devices, accounts, application, passwords, or
passcodes to Supervising Agency prior to the first use.  A digital device is any electronic system or device that can access, view, obtain,
store, or transmit visual depictions of sexually explicit conduct involving children.  ☑ In order to determine compliance, you agree to
submit to a search of your person and property, including digital devices, by Supervising Agency, which may be in conjunction with
law enforcement.

☑ All digital devices will be subject to monitoring by Supervising Agency.  You must comply with the rules and regulations
of the Computer Monitoring Program and must pay the cost of the Computer Monitoring Program.

☑ Do not associate or have verbal, written, telephonic, electronic, or any other communication with any person under the age of 18
except in the presence of the parent or legal guardian of the minor after you have notified the parent or legal guardian of the
pending charges or convictions involving a sex offense and only as authorized by Supervising Agency

☑ Do not enter or loiter within 100 feet of schoolyards, parks, public swimming pools, playgrounds, youth centers, video arcade
facilities, amusement and theme parks, or other places frequented by persons under the age of 18 and only as authorized to do so
by Supervising Agency.

☑ Do not be employed by, affiliated with, own, control, or otherwise participate directly or indirectly in the operation of any daycare
facility, school, or other organization dealing with the care, custody, or control of children under the age of 18.

☑ Do not view or possess child pornography or child erotica, including but not limited to pictures, photographs, books, writings,
drawings, or videos depicting or describing child pornography.  ☑ In order to determine compliance, you agree to submit to a
search of your person and property, including computer hardware and software, by Supervising Agency, which may be in conjunction
with law enforcement..

☑ Other conditions:
• limited to use only one smartphone device as
approved by supervising agency

Exhibit 4.

# ARGUMENT

## THE COURT SHOULD DENY THE GOVERNMENT'S MOTION AND RELEASE MR. RAVINE WHEN THE GOVERNMENT CAN NOT MEET ITS BURDEN TO ESTABLISH THAT NO CONDITIONS OF RELEASE COULD BE SET TO REASONABLY ASSURE THE SAFETY OF THE COMMUNITY.

### A.  Review of the Magistrate Judge's order of release

The government makes its motion pursuant to 18 U.S.C. §3145, which states in relevant part:

> **(a) Review of a release order.**--If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--
> **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release….
> The motion shall be determined promptly.

18 U.S.C. §3142(a).

"A district court reviews a magistrate judge's decision to release or detain a defendant *de novo*." *United States v. Rivera*, 2020 WL 4383505, *1 (S.D.N.Y. 2020) (citations omitted).

Here, the government seeks the detention of Mr. Ravine only on the ground that he poses a danger to the community that cannot be mitigated by conditions.  *See*, GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVIEW, APPEAL, AND REVOCATION OF MAGISTRATE JUDGE'S ORDER SETTING CONDITIONS OF RELEASE AND RELEASING DEFENDANT ON BAIL, at p. 4 (regarding "vulnerable members of our community," the government argues, "no condition or combination of conditions can reasonably assure their safety if the defendant is released from federal custody.")  The government makes no argument that Mr. Ravine poses an unacceptable risk of flight; accordingly, to the extend the government previously argued that Mr. Ravine posed an unacceptable risk of flight, the government has abandoned that claim and forfeits the argument

8

that Mr. Ravine should be detained on that basis.

The Court should release Mr. Ravine pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987).  Mr. Ravine has rebutted the presumption of detention in §3142(e)(3), and the government failed before Magistrate Judge Kewalramani and continues to fail here to meet its burden to establish that no conditions can be set to reasonably assure the safety of the community.

### B.  Mr. Ravine rebutted the presumption of detention.

The accusation in the criminal complaint, charging "an offense against a minor victim under section… 2251," triggers a rebuttable presumption of detention.  18 U.S.C. §3142(e)(3)(E).  That presumption "places a light burden of production on the defendant, but the burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention."  *United States v. Wilks*, 15 F.4th 842, 846-47 (7th Cir. 2021), citing *United States v. Dominguez*, 783 F.2d 702, 706–07 (7th Cir. 1986) ("The [defendant's] burden of production is not a heavy one to meet.")  The defense just needs to present "some evidence" to rebut the presumption. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

The presumption can be rebutted by "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g)…, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in 3142(g)(3)." *United States v. Dominguez*, 783 F.2d at 707.  "Once this burden of production is met, the presumption is 'rebutted'….  The burden of persuasion remains with the government once the burden of production is met. *Id.*, citing *Jessup*, 757 F.2d 381-82.

Here, Mr. Ravine rebutted the presumption of detention during the underlying detention

9

hearing, and he continues to do so here. He is a barely 20-year-old man with no criminal history and, accordingly, no history whatsoever of failing to appear in court as required. He has always lived with his family in his community around Riverside, California. He is a high school graduate who, pre-arrest, had stable, gainful employment. He has no history of alcohol or substance abuse. He has a stable residence available to him, provided by his grandmother who signed an appearance bond. It is not debatable that Mr. Ravine met his "light burden" to rebut the presumption of detention.

At the hearing before Magistrate Judge Kewalramani, the government made no argument that Mr. Ravine could not or did not rebut the presumption. The government makes no argument in its instant motion that Mr. Ravine has not rebutted or could not rebut the presumption.

**C. The government has not met—and cannot meet—its burden to show that no conditions can be set to reasonably assure the safety of the community.**

"In our society, liberty is the norm, and detention prior to trial or without trial is carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). A presumption of release is encapsulated in the Bail Reform Act. The statute dictates the Court shall release a person on personal recognizance or an unsecured bond unless "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(a) and (b). If release on personal recognizance or unsecured bond "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," then the Court shall order the pretrial release of the person subject to enumerated conditions, including "the least restrictive further condition, or combination of conditions" that the Court deems necessary to assure the person's appearance or the safety of the community. 18 U.S.C. §3142(c)(A) and

(B).

Detention is only permitted in the rare case in which the Court determines, after a hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. §3142(e)(1). The government's showing that "that no condition or combination of conditions will reasonably assure the appearance of the person as required" shall be supported by a preponderance of the evidence. *See, United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). (The government makes no such claim here.) The government's showing that "that no condition or combination of conditions will reasonably assure… the safety of any other person and the community" must be established by clear and convincing evidence. 18 U.S.C. §3142(f).

The government bases its request for detention on the argument that because the alleged conduct suggests Mr. Ravine has a "strong sexual interest in children", there are no conditions that could reasonably assure the safety of the community. The government makes that argument without any support for the conclusion it asks the Court to reach.

The government proffers no case law or study that supports the proposition that if an accusation suggests a defendant has a "strong sexual interest in children", that defendant cannot be released without unreasonably endangering the community. There is no such case or study. If there were such a case or study, the government undoubtedly would have cited it.

The government's argument is in direct conflict with the Bail Reform Act. Within the primary statute providing for pretrial release, 18 U.S.C. §3142, there is no crime or crime type—including any crime suggestive of "strong sexual interest in children"—which, if charged, mandates detention without regard to consideration of the circumstances of the case

11

and the accused.  To the extent the government's argument suggests alleged sex offenders must be detained, that argument conflicts with Bail Reform Act provisions specifically allowing for release—albeit on substantially restrictive conditions—for individuals charged with any one of the several federal sex offenses.  *See*, 18 U.S.C. §3142(c)(1).  The offense statute at issue in this case, 18 U.S.C. §2251(a), is enumerated within §3142(c)(1) as an offense for which pretrial release is contemplated so long as conditions of release would comply with the well-known Adam Walsh Act conditions, including an electronically monitored curfew.  *Id.*

The government's most specific claim to challenge the availability of effective conditions of release here is this one:   "A condition that prohibits [Mr. Ravine's] possession and use of internet-capable devices will not reasonably assure the safety of the community because cell phones are ubiquitous, easy to buy, easy to hide, and easy to anonymize."  Government's Memorandum of Law, pp. 7-8.  The government states *authoritatively* that such a condition "will not" address a possible danger posed by Mr. Ravine, but the government says so with *absolutely no authority* for that argument and no basis specific to Mr. Ravine that would justify the application of the claim to him.

First, however easy cell phones might be to access, the ease of access to things that could assist in offending is not a basis to detain everyone who theoretically might gain access. Drugs are easy to access, but the courts do not detain every person in a drug case on the basis that drugs might be "ubiquitous, easy to buy, easy to hide…."  The arguments that no condition restricting cell phone access or use could ever be effective, or that it is somehow impossible for the Probation Office to supervise and monitor cell phone access and use, are totally inconsistent with the everyday experience all in our federal courts.  Every day, Probation Offices around the country successfully supervise individuals with cell phone restrictions, successfully monitor

whether restrictions on use are being complied with, and successfully observe both compliance with conditions and noncompliance. If there was a case or a study supporting the conclusion argued by the government that effective monitoring of cell phone activity is impossible, the government would have cited it.

Second, the government offers absolutely no basis for the Court to conclude that Mr. Ravine himself could not or would not comply with restrictions on computer or cell phone access and use. The government cites no information within Mr. Ravine's history and characteristics that might support the claim he is likely to defy the authority of the Court. There is no such information. Rather, the available information suggests that he has no history whatsoever of defying orders, which is strong evidence that he would comply with conditions.

In my brief time with Mr. Ravine, a barely-20-year-old boy, I have observed that he is as shaken, humbled, and overwhelmed by the gravity of the accusation and this federal criminal justice process as one would expect of any normal, very young person with no criminal history. He gives every indication that he is frightened to death of worsening his circumstances. Defiance of a court order or condition of supervised release is likely the last thing he would do.

Magistrate Judge Kewalramani's observation in the face of the government's argument for detention is apt: "getting charged here is likely to result in less likelihood of repetition of this activity than to encourage it." T2:9. The government's arguments do not support the conclusion that no conditions can be set to reasonably assure the safety of the community.

Otherwise, the factors under §3142(g) simply do not establish by clear and convincing evidence that no conditions of release could be set to reasonably assure the safety of the community.

13

*Nature and circumstances of the offense:*

The government alleges Mr. Ravine, between 19 and 20 years old, engaged in sexually explicit discussions with, apparently, predominantly 15- and 16-year-old girls.  The government contends that Mr. Ravine induced one or more girls to create and transmit sexually explicit images.  The government also contends that Mr. Ravine engaged in wholly inappropriate sexual communications with such girls, including suggestions that the girls engage in sex acts with others, including young minors.  The allegations, if true, are very serious, particularly regarding the allegations suggesting the use of a minor in the creation of sexually explicit visual depictions.  However, this case appears to involve solely internet-related activity.  In response to defense counsel's inquiry, the government has made clear that it presently has no evidence that Mr. Ravine engaged in any in-person sexual activity with any minor.

However serious this case might be, the nature of the apparent age range and alleged conduct—a 20-year-old engaging in internet-related communications and inducements with a 15- or 16-year-old—differentiates this case from other cases charged under 18 U.S.C. §2251(a), such as cases involving much older male adults engaged in in-person forcible sexual contact with prepubescent minors.

*History and characteristics of Mr. Ravine:*

Mr. Ravine is a very young adult who has never lived away from his family's home.  He is a high school graduate who was stably employed prior to his arrest.  He has no criminal history.  He has no history of violence or any other troubling social activity.  He has no history of alcohol or substance abuse.  Mr. Ravine has very strong family ties and receives extraordinary support from his family.

Letters from Mr. Ravine's aunts, Denice Rod and Alice Rod, attest to those family ties

and support.  Those letters also reflect upon Mr. Ravine's good conduct over the course of his young life and that the accusations in this case are uncharacteristic of Mr. Ravine.

Mr. Ravine's history and characteristics support release.

*Weight of the evidence:*

The government claims the evidence is strong.  "[T]he weight of the evidence is the least important of the various factors."  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).  That is so in the typical case when, at such an early stage of the case, the defense has had insufficient opportunity to evaluate all discoverable evidence.  In this case, the government has provided some discovery, and the defense of examining it.

Here, whatever the weight of the evidence that might be proffered by the government, that factor does not support the conclusion that Mr. Ravine presents such a danger that cannot be mitigated with conditions.

*Nature and seriousness of the danger:*

Based upon the allegations, the potential danger posed by Mr. Ravine might be to engage in inappropriate communications and conduct online.  Although that danger is serious, it is not so serious as to preclude release, especially when it is an entirely mitigatable danger.

Magistrate Judge Kewalramani identified both the danger and the readily available conditions that would reasonably assure the safety of the community. Consistent with 18 U.S.C. §3142(c)(1)'s mandate in an enumerated sex offense case, Magistrate Judge Kewalramani imposed an electronically monitored curfew.  He also imposed a prohibition on contact with the alleged victim, required that Mr. Ravine reside with his grandmother, and that he possess only one smartphone.  Magistrate Judge Kewalramani also required that Mr. Ravine be subjected to highly restrictive conditions specific to a sex-offense allegation, including restrictions on

15

possession or use of computers or other digital devices, restrictions on contact and opportunities for contact with minors, restrictions on viewing or possessing child pornography, and that Mr. Ravine be subject to searches and monitoring of any electronic device to ensure compliance with those restrictions. Those conditions are sufficient to address any danger Mr. Ravine poses.

I have communicated with Mr. Ravine's grandmother, Rose Frye, who describes her home area as follows. She resides alone in a small home in a rural area with dirt roads where the homes are substantially separated. She has no criminal history or history of substance or alcohol abuse. There are no homes with small children nearby. The nearest places where children congregate, such as schools, playgrounds, etc., are miles away. She will prohibit visits by people with minor children while this case is pending. Ms. Frye would agree to visits, announced or unannounced, by the U.S. Probation Office to ensure compliance.

If the Court disagrees that the conditions imposed by Magistrate Judge Kewalramani are sufficient, there are still additional restrictions that this Court could impose, including, for instance, home detention as a more-restrictive location and movement limitation. Further, Rose Frye would be willing to act as a third-party custodian to ensure Mr. Ravine's compliance with conditions and his appearances in court, and she would be willing to notify the U.S. Probation Office of any compliance issues. Such additional conditions most surely would be sufficient to reasonably assure the safety of the community.

### CONCLUSION

Mr. Ravine rebutted the presumption of detention in §3142(e)(3). The government has failed to satisfy its burden to establish by clear and convincing evidence that no conditions of release could be set to reasonably assure the safety of the community. Accordingly, the Court should deny the government's motion and allow Mr. Ravine to be released on the conditions

imposed by Magistrate Judge Kewalramani or such other conditions as Your Honor might set.

DATED:        June 2, 2025                        LISA PEEBLES
                                                 Federal Public Defender


                                        By:    */s/ Timothy E. Austin*
                                               Timothy E. Austin, Esq.
                                               Assistant Federal Public Defender
                                               Bar Roll No. 508098
                                               Office of the Federal Public Defender
                                               54 State Street, Suite 310
                                               Albany, New York 12207
                                               Tel: (518) 436-1850
                                               Fax: (518) 436-1780
                                               Email: tim_austin@fd.org

**CERTIFICATE OF SERVICE**

I, Timothy E. Austin, Esq., attorney of record for the above-named defendant, hereby certify that on June 2, 2025, I electronically filed the foregoing Memorandum of Law in Opposition to Government's Motion for Review of Release Order with exhibits with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Richard Belliss and Mikayla Espinosa, Assistant U.S. Attorneys.

LISA PEEBLES
Federal Public Defender


By:    */s/ Timothy E. Austin*
Timothy E. Austin, Esq.
Assistant Federal Public Defender
Bar Roll No. 508098
54 State Street, Suite 310
Albany, New York 12207
Tel: (518)436-1850
Fax: (518)436-1780
Email: tim_austin@fd.org